CARAWAY,
dissenting.
1,1 respectfully dissent from the majority’s opinion.
There are three important points that require reversal in this case. First, an improper legal standard was applied by the majority causing a prohibited focus on Stonetrust’s voluntary payment of benefits and effectively eliminating George’s burden of proving his disability in the first place. “Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation un *17 der this Chapter.” La. R.S. 23:1204. Contrary to that mandate under the Act addressing voluntary payments, the majority holds Stonetrust to the standard under La. R.S. 28:1221 which addresses the termination of payments after a judicial “award” of temporary total disability benefits.
Section 1221 of the Act is the definitional provision for temporary total disability (TTD) benefits. It does not address an employer’s voluntary payment of benefits. Section 1221(l)(e) expressly establishes the employee’s burden of proof to show by clear and convincing evidence that he is unable to engage in any employment. Section 1221(l)(d) then addresses the employer’s cessation of payments after an “award” of TTD benefits, when a “reasonably reliable determination” reveals the disability to have resolved. To end its voluntary payments, Stonetrust did not need to make a reasonably reliable determination about George’s unproven disability. Under Section 1221 and under the test for summary judgment, George had to show by clear and convincing evidence and without any 12material issues of fact that a work-related accident caused his disability which rendered him unable to engage in employment.
The majority cites Snelling Personnel Services v. Duhon, 2000-661 (La.App.3d Cir.11/2/00), 772 So.2d 350, for the rule that voluntary benefit payments are never determinative of the employer’s liability and then ignores the Snelling ruling. As in the present ease, the Snelling employer had made voluntary payments of disability benefits, and the employee sought to place the burden of proof on the employer to justify the employer’s decision to end those benefits. Citing La. R.S. 23:1204, the court ruled:
Mr. Duhon has no judgment declaring his entitlement to benefits; rather, Snelling has been paying these benefits voluntarily. Therefore Snelling’s payments are not admissions of liability. If we were to allow Mr. Duhon to now shift the burden of proof to Snelling, then Mr. Duhon, the claimant, in essence would be allowed to entirely avoid ever having to bear the burden of proving that his injury was compensable under the standards articulated in La. R.S. 23:1221. Mr. Duhon may not now avoid this obligation by arguing that the employer’s voluntary payments shifted the burden of persuasion.
Snelling, supra at 353. The workers’ compensation judge and the majority have now thoroughly tried the statements in a newspaper article and the circumstances of George’s brush with law enforcement officers. In the process, George was not required to show that he is disabled and that no genuine issues of material fact exist regarding his disability.
Second, the record is less than clear as to which disabling condition George now suffers. The majority apparently rests its affirmation of this summary judgment only on the undisputed finding of a work-related accident. Yet, it never states any undisputed facts pinpointing the | .¡employee's disabling injury. The majority says, “there were several factors at play: his wrist pain, his PTSD, and his being fired.” Those factors are at variance and easily combine together as a cloud of material fact issues. George claimed in his pleadings a disability for either a physical injury (wrist or neck injury), occupation disease (carpal tunnel syndrome) or PTSD, which, when blurred together, create significant material issues of fact.
Importantly, the majority’s opinion obscures the timeline of events in the first three months of 2009 and is completely inaccurate as to the time of the diagnosis of PTSD. This inaccuracy clouds an im *18 portant implication concerning George’s firing. Prior to February 7, 2009, when George was fired, he had worked as a truck driver continuously since two days after his May 18, 2008 accident and had received no opinion by a physician that he was unable to work. In January 2009, Dr. Finley’s examination as an orthopedist concerned primarily George’s wrist injury and carpal tunnel disease. Five days after he was fired, George returned to Dr. Finley, who then first recommended that George see a psychiatrist. The records of Dr. Finley, who was not deposed, suggest that Dr. Finley gave George an excused absence from work until a March 2009 examination by a psychiatrist could be made. George first saw the psychiatrist, Dr. Vandenberg, on March 30, 2009. The PTSD diagnosis was therefore made seven weeks after George was fired.
To complicate matters further, Stone-trust’s voluntary payments were apparently tied to the possibility of a physical disability related either to | injuries received in the vehicle accident or carpal tunnel syndrome. There is no clear evidence that Stonetrust ever acknowledged PTSD as the reason for its voluntary payment of benefits.
Therefore, with this proceeding filed as an employer-instituted action, it is not clear whether the employee desires to prove a physical injury from the accident, carpal tunnel syndrome, or PTSD. The first two of these disabilities clearly raise material fact issues since George worked unimpeded for a lengthy period of time after the accident. There is no showing that George has been diagnosed by a physician as disabled because of a physical injury. With the employee taking a shotgun approach with claims of multiple causes for his disability, the majority opinion never identified exactly which of those causes has been proven without any genuine issue of material fact.
Finally, from a review of Dr. Vanden-berg’s deposition, genuine issues of material fact exist regarding the diagnosis of the mental injury, PTSD, and its disabling effect. Moreover, one undisputed fact requires reversal of the judgment’s award for TTD. Despite his diagnosis, Dr. Van-denberg testified that George is able to work, and in fact, Dr. Vandenberg has encouraged him to return to work.
La. R.S. 23:1021(8)(b), (c) and (d) address mental injury sustained by employees, as follows:
(b) Mental injury caused by mental stress. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress 1 ^related to the employment and is demonstrated by clear and convincing evidence.
(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee’s body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.
(d) No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
*19 For the recovery of workers’ compensation benefits for mental injury, “the ‘clear and convincing’ standard is a heavier burden of proof than the usual civil case of ‘preponderance of the evidence’ standard but is less burdensome than the ‘beyond a reasonable doubt’ standards of a criminal prosecution.” Traweek v. City of West Monroe, 30,571 (La.App.2d Cir.5/13/98), 713 So.2d 655.
As shown in this court’s ruling in Traw-eek, which involved the diagnosis of PTSD in a workers’ compensation setting, the diagnostic criteria of PTSD require the accurate reporting of the persistent symptoms of the patient. A psychiatric assessment and explanation of human behavior depends upon the credibility of the patient’s report. In this case, there are many factual issues surrounding George’s reporting to Dr. Vandenberg. Dr. Van-denberg testified that George did not report that he had returned to work after the accident and worked for over eight months until he was fired. Instead, George reported that his wrist injury was his reason for not working. Immediately prior to the hearing on the summary judgment, | nGeorge was arrested again on charges including possession of a firearm by a convicted felon and possession of a Schedule III illegal drug with intent to distribute. Dr. Vandenberg admitted that he did not specifically ask George about any prior arrest or conviction. When asked by Dr. Vandenberg regarding prior legal problems, George denied such problems. Yet, in his deposition, George admitted his convictions prior to 2008 for manslaughter and domestic abuse violence. Therefore, Dr. Vandenberg’s diagnosis was made without knowledge of those prior traumatic criminal events.
Regardless of Dr. Vandenberg’s diagnosis of PTSD, I find that there are genuine issues of material fact regarding George’s underlying reporting of crucial facts upon which a psychological evaluation must be made. While the majority may reject Sto-netrust’s claim for forfeiture of benefits under La. R.S. 23:1208 and excuse George for “inadvertently” making “falsities” in his statement, neither the trial court nor the appellate court may make such credibility calls in rendering a summary judgment. This award for a physical/mental injury under the workers’ compensation act requires clear and convincing evidence and no genuine issues of material facts and should be reversed.